**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DAMION LAMARR CARTER, | ) | CASE NO. 3:19-cv-815 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ED SHELDON, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Damion LaMarr Carter (hereinafter "Petitioner" or "Carter"), challenges the constitutionality of his conviction in the case of *State v. Carter*, Allen County Court of Common Pleas Case No. CR-96-01-0007. Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 12, 2019. (R. 1). On October 11, 2019, Warden Ed Sheldon ("Respondent") filed a Motion to Dismiss the petition as time-barred. (R. 8). On October 29, 2019, Petitioner filed a brief opposing the motion (R. 9), and Respondent filed a reply on November 13, 2019. (R. 10). Despite not seeking leave of court to do so, Petitioner filed a response to the reply on November 25, 2019. (R. 11). This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the Motion to Dismiss be GRANTED and that this matter be DISMISSED as time-barred.

## I. State Procedural History

### A. Conviction

On January 11, 1996, an Allen County Grand Jury issued an indictment charging Carter

with one count of Aggravated Murder, in violation of Ohio Revised Code ("O.R.C.") § 2903.01(B) with an accompanying firearm specification. (R. 8-1, Exh. 1). On March 8, 1996, Petitioner, represented by counsel, entered a negotiated plea of guilty to a reduced charge of murder in violation of O.R.C. § 2903.02(A) with a firearm specification. (R. 8-1, Exh. 3). The trial court accepted Carter's plea and found him guilty. (R. 8-1, Exh. 4). On March 8, 1996, Petitioner was sentenced to a term of 15 years to life imprisonment, to be served consecutively to a three-year term for the firearm specification, resulting in an aggregate sentence of 18-years to life. (R. 8-1, Exh. 4).

**B.  Direct Appeal**

Petitioner did not file a direct appeal. Thus, his conviction became final thirty (30) days later on April 7, 1996.

**C.  Other State Court Filings**

Beginning in 1999, Petitioner made several post-conviction filings in the state courts, and appeals therefrom, every few years, including no less than three motions to withdraw his guilty plea. This procedural history is set forth in Respondent's motion, is unchallenged by Petitioner, and has little, if any, bearing on the timeliness of the current habeas petition.[1] As such, the court will not repeat this history.

---

[1] State post-conviction filings, even if timely, cannot serve to toll a statute of limitations that has already expired. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman*, 346 F.3d at 602 (citation omitted); *cf. Eberle v. Warden, Mansfield Corr. Inst.*, 532 Fed. App'x 605, 609 (6th Cir. 2013) ("2244(d)(1)(A)'s one-year clock does not run anew after an Ohio appellate court denies a defendant's application to reopen his direct appeal due to ineffective assistance of appellate counsel.")

**D.     Delayed Motion to File Direct Appeal**

More than twenty-one (21) years after his sentencing, on November 13, 2017, Carter filed a notice of appeal along with a motion for leave to file a delayed direct appeal of his sentence pursuant to Ohio App. R. 5. (R. 8-1, Exhs. 38 & 39). In his brief in support, Carter claimed that the reason for the 21-year delay in filing his direct appeal was because he had "finally discovered the trial court had failed to properly inform him of his right to appeal and where to file it by [the] court in it's [sic] June 19, 2017 dated decision and opinion."[2] (R. 8-1, PageID# 471, Exh. 39).

On November 21, 2017, the state appellate court denied leave to file a delayed direct appeal, finding Petitioner failed to set forth sufficient reason for his failure to timely appeal the 1996 judgment of sentence. (R. 8-1, Exh. 40). The court explained that:

> The sentencing judgment reflects that Appellant appeared with counsel and all rights were afforded under Crim.R. 32. In addition, *Appellant's assertion that he was not informed or aware of his appellate rights is unfounded*. Appellant's motion acknowledges that he filed at least five post-conviction motions and appeals in the past twenty years, since his conviction and sentence. Accordingly, the motion is not well taken.

(R. 8-1, PageID# 476, Exh. 40) (emphasis added).

On December 26, 2017, Carter filed a notice of appeal from the decision with the Ohio Supreme Court. (R. 8-1, Exh. 41). In his memorandum in support of jurisdiction, he asserted one proposition of law: "Whether a court of appeals has a statutory duty to require a lower court to resentence a defendant in accordance with Crim.R. 32." (R. 8-1, Exh. 42). On April 25, 2018, the

---

[2] Petitioner is plainly referencing the state appellate court's denial of his appeal from the denial of his third petition for post-conviction relief. The state appellate court stated that: "Carter did not file a direct appeal of his conviction or sentence to this court." (R. 8-1, PageID# 457, Exh. 37).

3

Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 8-1, PageID# 494, Exh. 43).

**E. Federal Habeas Petition**

Petitioner indicates that he placed his Petition in the prison mailing system on March 28, 2019. (R. 1, PageID# 12). The Petition for Writ of Habeas Corpus asserts the following grounds for relief:

> **Ground One**: Carter['s] guilty plea was not knowingly, intelligently, and voluntarily. It was the product of government interference with Carter's right to effective assistance of counsel for his defense, right to a fair and speedy trial, right to due process and equal protection of the law under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.
>
> **Ground Two**: Carter's guilty plea was not knowingly, intelligently, and voluntarily. It was the product of coercion by defense counsel Maria Santo who had purposely and wantonly provided Carter with erroneous advice and assistance to deny Carter a dismissal and discharge pursuant to R.C. § 2945.71 and § 2945.73 right to effective assistance of counsel for his defense, and the right to a fair and speedy trial in violation of Carter's Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Constitution of the State of Ohio.

(R. 1, PageID# 5-8).

## II. Statute of Limitations

**A. Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")**

This case is governed by the AEDPA, 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997); *Watkins v. Warden*, No. 17-1388, 2017 WL 4857576 at *1 (6th Cir. Sept. 28, 2017) ("Actions arising under § 2254 have a one-year statute of limitations.") The relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

4

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

**B. One-Year Limitation**

In the instant action, Respondent asserts that the petition is time-barred because Petitioner did not file within the one-year limitations period. (R. 8). As stated above, "the limitation period shall run from the latest of the date on which the judgment became final by the conclusion of direct review *or* the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A) (emphasis added). In addition, the one-year statute of limitations does not begin to run until all direct criminal appeals in the state system are concluded, followed by either completion or denial of certiorari before the United States Supreme Court, or the expiration of the time allowed (90 days) for filing for certiorari. *Clay v. United States*, 537 U.S. 522, 528 n.3 (2003); *Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002); *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001), *cert. denied*, 534 U.S. 924 (2001) (citing cases).

Respondent asserts that Petitioner's conviction became final on April 7, 1996—thirty (30) days after his sentence—when the time to file a timely notice of appeal with the state appellate

5

court expired pursuant to Ohio App. R. 4(A). (R. 9, PageID# 71). The Sixth Circuit Court of Appeals "has held that a petitioner whose conviction became final prior to the effective date of the AEDPA … has one year from the effective date, or until April 24, 1997, within which to file a petition for writ of habeas corpus." *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001), *cert. denied,* 534 U.S. 1135 (2002). Because Petitioner's conviction became final prior to April 24, 1996, the effective date of AEDPA, Respondent concedes that a one-year "grace period" applies to such claims. (R. 8-1, PageID# 71).

The court agrees that Petitioner had until April 24, 1997, to file a timely petition for a writ of habeas corpus. Petitions filed more than one year after the conclusion of direct review are not axiomatically untimely, as AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.'" *Evans v. Chavis*, 546 U.S. 189, 191, 126 S. Ct. 846, 163 L. Ed. 2d 684 (2006) (quoting 28 U.S.C. § 2244(d)(2)); *Carey v. Saffold*, 536 U.S. 214, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). Although Carter filed numerous post-conviction filings, none of them had any tolling effect as the one-year statute of limitations had already expired. Carter's first post-conviction filing was a *pro se* "Petition to Vacate or Set Aside Sentence" pursuant to R.C. § 2953.21 filed on February 12, 1999—nearly two years after the expiration of AEDPA's statute of limitations. (R. 8-1, PageID# 94, Exh. 5). State post-conviction filings, even if timely, cannot serve to toll a statute of limitations that has already expired. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman*, 346 F.3d at 602 (citation

omitted); *accord Eberle v. Warden, Mansfield Corr. Inst.*, 532 Fed. App'x 605, 609 (6th Cir. 2013) ("2244(d)(1)(A)'s one-year clock does not run anew after an Ohio appellate court denies a defendant's application to reopen his direct appeal due to ineffective assistance of appellate counsel.") Therefore, the court concludes that the habeas petition is untimely.

In his traverse, Petitioner relies on *McIntosh v. Hudson*, 632 F. Supp.2d 725 (N.D. Ohio Jul 10, 2009), arguing that the district court therein found that a petitioner's "appeal-based claims" were timely "since the statute of limitations began to run when the inmate's **delayed appeal** was denied by the appellate court…." (R. 9, PageID# 501) (emphasis in original). Petitioner's argument, however, is without merit. In *DiCenzi v. Rose*, the Sixth Court of Appeals divided a petitioner's habeas claims into two separate groups: (1) appeal-based claims; and (2) sentencing-based claims. 452 F.3d 465, 468-472 (6th Cir. 2006). The *DiCenzi* court found that only one out of four of the petitioner's grounds for relief implicated an appeal-based claim—the ground that argued the state appellate court improperly refused to allow him to file a delayed appeal. *Id.* at 468. The other three claims—that petitioner (1) was denied his right to effective assistance of counsel when counsel did not inform him of his appellate rights; (2) was sentenced to an illegal sentence under Ohio law; and (3) was not informed of his appeal rights by the trial court despite his guilty plea—were all classified by the *DiCenzi* court as "claims based on errors at sentencing." *Id.* at 469. Even though the first and third grounds for relief at least implicated his appeal rights, the *DiCenzi* court, nonetheless, did not consider them appeal-based claims and found that "the petitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim, pursuant to 28 U.S.C. § 2244(d)(1)(D)." *Id.* at 471. The district court decision in *McIntosh*, upon which Petitioner relies, merely followed *DiCenzi* by recognizing that

7

"sentencing-based claims" may not be time-barred and "[t]he petitioner could have benefitted from the later statutory period if he exercised due diligence in discovering his right to appeal, which was the factual predicate of his conviction-based claim pursuant to § 2244(d)(1)(D), or if he could show that he filed for habeas corpus within one-year from the time a person in his situation acting with due diligence would have discovered his right to appeal." 632 F. Supp.2d at 725 (citing *DiCenzi*, 452 F.3d at 469-472).

Here, based on *DiCenzi*'s differentiation between appeal-based claims versus sentencing-based claims, Petitioner's two grounds for habeas relief clearly do not invoke appeal-based arguments. Instead, they assert, somewhat redundantly, that his guilty plea was not knowingly, intelligently, and voluntarily entered due to appointed counsel's alleged ineffectiveness for failing to assert a statutory speedy trial violation. (R. 1). Because these arguments are more akin to the sentencing-based claims (though more accurately plea-based claims),[3] Petitioner continues to bear the burden of showing that the factual predicate of his claim, despite the exercise of due diligence, did not become known to him until a later date, and that he filed within one year of that date.

Carter has claimed that the 21-year delay in filing his delayed direct appeal was due to the alleged fact that he "finally discovered the trial court had failed to properly inform him of his right to appeal and where to file it by [the] court in it's [sic] June 19, 2017 dated decision and opinion." (R. 8-1, PageID# 471, Exh. 39). The state appellate court was not persuaded by Carter's assertion, finding that his claim was both "unfounded" and that his filing of "at least five

---

[3] "As a matter of custom and usage … a judgment in a criminal case 'includes both the adjudication of guilt and the sentence.'" *King v. Morgan*, 807 F.3d 154, 157–58 (6th Cir. 2015) (citations omitted).

post-conviction motions and appeals in the past twenty years" since his conviction, rendered his claim hollow. (R. 8-1, PageID# 476, Exh. 40). Moreover, even if the court were to credit Carter's assertion that he did not learn of his right to file a direct appeal until 2017, the dispositive question remains whether he had *exercised due diligence* in taking twenty years to learn of his appellate rights. The resounding answer to that question is no. "Courts in this Circuit have recognized that when a petitioner has access to retained counsel, due diligence requires that he ask his counsel about his appellate rights. A period not greater than 90 days is a reasonable amount of time in which to inquire of counsel." *Baker v. Wilson*, No. 5:06cv1547, 2009 U.S. Dist. LEXIS 8922 at *4, 2009 WL 313325 (N.D. Ohio Feb. 6, 2009) (citing *Ramos v. Wilson*, 1:06cv901, 2008 U.S. Dist. LEXIS 48005, 2008 WL 2556725 (N.D. Ohio 2008)). Even if Carter did not have or did not ask retained counsel about his appellate rights, Carter's inaction in discovering his appellate rights is the polar opposite of diligence. A prisoner who sits by and waits twenty years to be apprised of a fact by a state court during a collateral proceeding cannot be construed as acting diligently.

Finally, even if the court were to construe Carter's petition as raising as an express ground for relief that Petitioner's due process rights were violated when the state appellate court denied his motion for a delayed appeal, the court disagrees with the proposition that the absolute starting point for the statute of limitations in a case where a motion for a delayed appeal was denied is the date of the state appellate court's decision denying the delayed appeal. The court is unconvinced that the *DiCenzi* decision can reasonably be construed as completely negating any diligence requirement whatsoever. Further, even if the court were to accept such an interpretation of *DiCenzi*, the continued validity of such a holding would be doubtful in light of the United

9

States Supreme Court's rulings as explained by a later decision of the Sixth Circuit Court of Appeals:

> Although the trial court's failure to notify Petitioner of his appellate rights under Ohio law set the stage for this habeas case, our inquiry today concerns the actions not of the trial court, but of the Ohio Court of Appeals—and of Petitioner himself. Roughly five years after his sentencing—and nearly as long after receiving a letter describing possible grounds for an appeal—Petitioner filed a motion for delayed direct appeal to the Ohio Court of Appeals. After the thirty-day period for filing a direct appeal, Rule 5(A) allows criminal defendants to bring an appeal "with leave of the court to which the appeal is taken." Ohio R. App. 5(A). In general, a defendant seeking a delayed appeal pursuant to Rule 5(A) must demonstrate cause for both the delay itself, and the length of delay. *Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011). Ohio places no time limit on bringing such motions. *See Board v. Bradshaw*, 805 F.3d 769, 773 (6th Cir. 2015).
>
> The parties dispute whether Petitioner's habeas claim challenging the denial of the direct appeal was timely under AEDPA's one-year statute of limitations. Relying on this Court's decision in *DiCenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006), Petitioner argues that his habeas claim challenging the Ohio appellate court's denial of his appeal accrued when the court denied his appeal, and he is therefore entitled to a later start date of the AEDPA statute of limitations pursuant to § 2244(d)(1)(D). Respondent replies that under *Johnson v. United States*, 544 U.S. 295, 125 S. Ct. 1571, 161 L. Ed. 2d 542 (2005), Petitioner cannot avail himself of a delayed start to the limitations period because he did not show due diligence in seeking a delayed direct appeal.
>
> By its terms, section 2244(d)(1)(D) "requires diligence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1933, 185 L. Ed. 2d 1019 (2013). The Supreme Court has cautioned against reading this requirement "out of the statute." Johnson, 544 U.S. at 310. *Johnson* concerned whether the petitioner could avail himself of a delayed accrual date under § 2255(f)(4), the similarly worded analog to § 2244(d)(1)(D) applicable to federal convictions, where a petitioner waited over three years to return to state court to attempt to vacate a state conviction that had supported an enhanced federal sentence. 544 U.S. 295, 125 S. Ct. 1571, 161 L. Ed. 2d 542. The Supreme Court ruled that although the petitioner had filed his federal habeas petition within one year of the state court's vacatur order, the petition was nonetheless untimely because AEDPA "allows the fact of the state-court order to set the 1-year period running only if the petitioner has shown due diligence in seeking the order," which it deemed the petitioner not to have done. *Id.* at 302.
>
> Emphasizing the petitioner's role in bringing about the vacatur order, the majority held that "[t]he requirement of due diligence must therefore demand something

10

more than the dissent's willingness to accept no diligence at all." *Id*. at 309. It continued:

> Where one "discovers" a fact that one has helped to generate, however, whether it be the result of a court proceeding or of some other process begun at the petitioner's behest, it does not strain logic to treat required diligence in the "discovery" of that fact as entailing diligence in the steps necessary for the existence of that fact.

*Id*. at 310 (internal citations omitted). The [Supreme] Court expressly rejected the petitioner's arguments, comparable to those advanced by Petitioner here, that he was acting pro se and had sought vacatur immediately upon receiving help from an inmate law clerk. *Id*. at 301, 311. In the final section of the opinion, the majority subjected the petitioner to a reasonableness test, holding that he had "delayed unreasonably" and that "on this record . . . [the petitioner] fell far short of reasonable diligence." *Id*. at 311.

Like this case, *DiCenzi v. Rose*, which postdated but did not cite or discuss *Johnson*, involved an Ohio defendant who pled guilty but was not notified of his right to appeal at sentencing. 452 F.3d 465. Two years later, after he had filed motions for judicial release and to merge his convictions, he contacted a public defender, who informed him of his right to appeal; immediately thereafter, he filed a motion for delayed appeal, which the Ohio Court of Appeals denied. *Id*. at 467. The petitioner subsequently sought federal habeas relief pursuant to 28 U.S.C. § 2254 alleging, among other things, that the Ohio Court of Appeals had unconstitutionally denied his request to file a delayed appeal. *Id*. *DiCenzi* discussed the accrual date of the claim related to the denial of appeal in the briefest of terms:

> This claim accrued when the Court of Appeals for Cuyahoga County denied DiCenzi's motion for delayed appeal, on September 25, 2001. Therefore, under 28 U.S.C. § 2244(d)(1), the AEDPA "clock" began running on September 25, 2001. *See* 28 U.S.C. § 2244(d)(1)(D) (initiating the one-year AEDPA requirement on the date upon which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence).

*Id*. at 468. The citation to § 2244(d)(1)(D) and the parenthetical mention of due diligence suggest that the *DiCenzi* court considered due diligence in seeking delayed appeals; whatever the due diligence inquiry for appeal-based claims, it appears to have been satisfied on the facts of that case.

**Reading *DiCenzi* for the proposition that appeal-based claims entail no diligence inquiry, as Petitioner seems to do, likely misconstrues that case, and certainly misconstrues the statute, to which we are obliged to give full effect**.

11

> Section 2244(d)(1)(D) allows a delayed accrual date beginning with "the date on which the factual predicate of the claim or claims presented *could have been discovered through the exercise of due diligence*" (emphasis added). *Johnson* requires this Court to give meaning to the latter part of this clause, subjecting a petitioner to a duty of reasonable diligence in pursuing appeals as well as attacking sentences directly. *See* 544 U.S. at 310-11. With respect to Petitioner's delayed appeal claim, the factual predicate was the Ohio Court of Appeals' declining to hear his delayed direct appeal, and Petitioner indeed filed a habeas petition within a year of that denial. However, it is not at all clear whether that denial could have come sooner. The burden of showing due diligence rests with the petitioner. *McSwain v. Davis*, 287 F. App'x 450, 454-55 (6th Cir. 2008).

*Shorter v. Richard*, 659 Fed. Appx. 227, 229-231 (6th Cir. 2016) (bold emphasis added); *accord Amnathphonthip v. Warden*, No. 2:17cv1129, 2018 U.S. Dist. LEXIS 124935, at **2-8; 2018 WL 3586660 (S.D. Ohio Jul. 26, 2018), *adopted by* 2018 U.S. Dist. LEXIS 144524, at *1, 2018 WL 4043154 (S.D. Ohio Aug. 24, 2018) (also denying Petitioner's request to expand the record with a copy of the transcript of his guilty plea hearing).

Therefore, even if grounds one and two could reasonably be construed as appeal-based claims—a construction that arguably would go beyond active interpretation of the habeas petition—the petition remains untimely due to Petitioner's complete lack of diligence. As stated in *McIntosh* upon which Carter relies, a petitioner who does "not act to discover any appellate rights for more than a two-and-a-half years after his conviction" fails to demonstrate "that he is entitled to a later statutory limitations period, allowed by 28 U.S.C. § 2244(d)(1)(D), with regard to his conviction-based claims." 632 F. Supp.2d at 735. This court agrees with *McIntosh* that "[a] person in Petitioner's position exercising due diligence would have acted much sooner, seeking out his rights and remedies rather than waiting for a law clerk [or in this case a state court's decision] … to '[notice] that [he] was never informed of his right to appeal." *Id*.[4]

---

[4] Needless to say, a twenty-year delay versus a two-and-a-half year delay only strengthens the court's determination that Carter failed to exercise due diligence.

12

Finally, Petitioner has not identified any new, reliable evidence demonstrative of actual innocence that could waive the applicability of the statute of limitations.

### III. Conclusion

For the foregoing reasons, it is recommended that Respondent's motion to dismiss (R. 8) be GRANTED and that this matter be DISMISSED as time barred.

/s/ *David A. Ruiz*
U.S. MAGISTRATE JUDGE

Date: April 24, 2020

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986).**